DAIRYMEN'S LEAGUE CO-OPERATIVE ASSOCIATION, INC., Plaintiff,
*v.* THE BROCKWAY COMPANY and JOHN H. BRIOR, Defendants.

Supreme Court, Jefferson County, February 7, 1940.

*Seward A. Miller*, for the plaintiff.

*Cosgrove, Harter, Scanlon & Wright* [*Daniel Scanlon* of counsel], for the defendants.

MOREHOUSE, J.   The defendants have moved under subdivision 5 of rule 106 of the Rules of Civil Pactice to dismiss the complaint

in this action which is brought to recover a penalty of $500 under section 20 of the Co-operative Corporations Law.

The plaintiff alleges that it is a co-operative association of the State of New York, subject to the Co-operative Corporations Law, and engaged in dealing in milk and milk products for upwards of 30,000 producers of milk in New York State under contract to it, of whom 3,777 reside in the counties of St. Lawrence, Jefferson, Oswego, Franklin and Lewis, where it operates approximately fifteen milk plants.

The defendant The Brockway Company, according to the complaint, is a domestic corporation, and the publisher of Watertown *Daily Times*, a newspaper with an average daily circulation of 35,000, extensively and chiefly circulated in the five counties named, and the defendant John H. Brior, its employee, is a special newswriter.

Continuing, the complaint alleges that on October 28, 1937, an unincorporated association known as Dairy Farmers Union advocated withholding deliveries of milk by producers, incited a so-called " milk strike " among them in the counties mentioned accompanied by picketing, physical force, threats and violence, as a result of which more than 1,200 producers under contract with the plaintiff ceased delivering milk to the plaintiff or dealers buying from it.

On that date, Watertown *Daily Times*, in reporting the strike, published a news article allegedly written by the defendant Brior, which contained a statement purporting to come from union officials concerning the attitude of league officials, and alleged by the plaintiff to be in contravention of section 20 of the Co-operative Corporations Law, for which it seeks the statutory penalty of $500. The article complained of occupied four full columns containing approximately 600 lines, of which the objectionable matter constituted a sentence of ten lines. One of the pages upon which it appears was completely filled with strike news contained in a dozen articles from different localities, about half of which were Associated Press or United Press dispatches.

Section 20 of the Co-operative Corporations Law was first embraced in section 24 of chapter 616 of the Laws of 1924, and was last re-enacted as at present by chapter 383 of the Laws of 1932, and so far as known has never been interpreted by judicial decision. It reads as follows:

" § 20. Misdemeanor to spread false reports about the finances or management thereof. Any person who maliciously and knowingly spreads false reports about the finances or management or activity of any co-operative corporation incorporated under or subject to this chapter or organized under a similar statute of another State,

and operating in this State under due authority, shall be guilty of a misdemeanor and be subject to a fine of not less than one hundred dollars and not more than one thousand dollars for each such offense; and shall be liable to the corporation aggrieved in a civil suit in the penal sum of five hundred dollars for each such offense."

The news article containing the words which have been made the subject of this action, recounted progress of the strike in some of the eighteen counties expected to be affected, and included reports and interviews from persons and organizations affected. Some of these were favorable to withholding of milk by the producers, while others were opposed, including the plaintiff's president, who was quoted in a formal statement of forty-nine lines. The particular words which the plaintiff claims were false and published maliciously and knowingly, but not a part of its president's formal statement, are the following: " Before noon, it was reported through Union officials that the Dairymen's League and Borden — two major milk trust concerns — were making overtures toward settlement of the few-hour-old strike. Both concerns, according to a report, are willing to extend Union recognition and pay farmers on a 3% basis." Plaintiff complains that the report that it " was making overtures towards a settlement," and was " willing to extend Union recognition " was false, as well as the parenthetical reference to it as one of the " major milk trust concerns." The complaint further refers to and asks consideration of previous articles published by the Watertown *Daily Times,* which it claims were likewise false and tended to be injurious. Such articles coupled the name of the plaintiff with National Dairy Products Corporation, Sheffield's Producers Co-operative Association and the Borden Company. The first was published three years prior to the article in question and others in April and July, 1937. The action is grounded solely upon an excerpt from the article of October 28, 1937, as in violation of section 20. Only the propriety of its language may be questioned, and its meaning cannot be broadened by the inclusion of extraneous matters; so they will not be considered hereafter in discussion of the defendant's motion.

It is the ofttimes repeated rule that upon this motion to dismiss the complaint for failure to state facts sufficient to constitute a cause of action, every intendment and fair inference is in favor of the complaint. (*Dyer* v. *Broadway Central Bank,* 252 N. Y. 430, 432.) It is equally true that inasmuch as a violation of section 20 is a crime, punishable by fine and the recovery of a penalty, it must be strictly construed. " A statute awarding a penalty is to be strictly construed, and before a recovery can be had a case must be brought clearly within its terms." (*Osborne* v. *International R. Co.,* 226

N. Y. 421, 426.) Consequently, the intendments and inferences favorable to the complaint may be applied only in accordance with such mode of statutory construction.

The Watertown *Daily Times* is one of the leading newspapers in the State outside of the metropolitan area, and is widely circulated in the North Country where the dairy industry is of paramount importance. Its readers expect and are entitled to all of the news in regard to a matter so closely concerned with their principal source of livelihood. To deprive them of this privilege would be tantamount to a denial of their rights as citizens, which could not have been contemplated by the Legislature in its enactment of a penal statute. Freedom of speech and of the press, safeguarded as it is by both State and Federal Constitutions, is an inviolable right, and it must be presumed that the Legislature acted without intent to infringe upon it by limitation or curtailment of the dissemination of legitimate news of important events.

Violation of section 20 has been made a crime, and this carries the intendment that the " report " and " activity " designated must be evil or harmful, for otherwise, no one would be " aggrieved," that also being essential. Surely, the Legislature did not contemplate punishment or penalty for reports of a creditable nature, since they would be beneficial or at least innocuous. An act inherently good may be ill timed, but it is not criminal, and it would be ridiculous to call it malicious. The article containing the statements upon which the plaintiff's complaint is based must be construed as a whole, and in the light of the circumstances surrounding its publication. " The general rule is that in actions for libel the entire publication may be shown for the purpose of determining the meaning and application of that portion for which the action is brought if it leads up to the words said to be actionable." (*First National Bank of Waverly* v. *Winters*, 225 N. Y. 47, 51.) While this is not an action for libel, the sense and meaning of the published statement is similarly in point, and the construction of the language equally susceptible to other portions of the article. It was the legitimate business of the defendants to gather and to publish all the news pertaining to the serious and widespread disturbance then taking place in the dairy industry. That was the most important news of the day to a great number of the readers of the Watertown *Daily Times*, and their vital interest entitled them to prompt and complete information of daily developments. It was matter of common knowledge that violence threatened and drastic action impended. Publication of a statement purporting to come from officials of the union to the effect that officials of the league were making overtures, was beneficial to all parties in that it was calcu-

lated to deter or postpone further overt acts upon the part of the so-called strikers. It imputed to the officials of the league a willingness to give consideration to the merits of the controversy which so directly affected milk producers and the welfare of its own membership, and an overture, a prelude, to negotiations.

The dairy industry is the lifeblood of the farmers of the North Country and intimately related to the well being of the other inhabitants of that section. With this in mind, it is inconceivable that a report to the effect that plaintiff's officials were willing to negotiate toward the settlement of a controversy certain to lead to great financial loss and possible bloodshed should give plaintiff just cause for complaint. On the contrary, such an attitude would indicate concern for its membership and a commendatory desire to avoid hardship and suffering certain to result from prolongation of a strike.

Plaintiff founds its cause of action in part upon reference to it as one of the " major milk trust concerns." That this appellation did not happen to be to the plaintiff's liking does not warrant a conclusion that it was thereby " aggrieved " in the sense that it was given cause for just complaint, and so within the meaning of section 20 entitled to recover a penalty without proof of damage. According to common speech, in view of its membership contracts, the plaintiff is a trust, that being defined as " A combination of interests for the purpose of regulating and controlling by means of a common authority the use, supply, or disposal of some kind of property." (Funk & Wagnalls Standard Dict. 1934.) It, subject as it is to the Co-operative Corporations Law, is specifically exempted from the effect of anti-trust laws (Co-operative Corporations Law, § 128; *Barns* v. *Dairymen's League Co-op. Assn., Inc.*, 220 App. Div. 624) and, under Federal statutes, it has been said that " A cooperative enterprise, otherwise free from objection, which carries with it no monopolistic menace, is not to be condemned as an undue restraint." (*Appalachian Coals, Inc.*, v. *United States*, 288 U. S. 344, 373.) Classification as a " trust " does not imply infamy, for all trusts are not illegal. Neither was the employment of the term as an incidental allusion in the *Times* a " report " of which the plaintiff may complain.

Careful analysis of the few lines containing the objectionable announcement of a conciliatory attitude upon the part of league officials, including the incidental reference to it as a member of the " milk trust," leads to the conclusion that they did not under all of the surrounding circumstances constitute " false reports about the finances or management or activity " of the plaintiff by which it was " aggrieved " within the meaning of section 20, and conse-

quently the words are not actionable. It should follow that malice or knowledge of falsity is immaterial, but in any event, they have not been sufficiently alleged in the complaint. The allegations in paragraph 13 of the complaint that the statements were made " knowingly and maliciously," unsupported as they are by any allegations of fact showing either knowledge of falsity or malice, or by any other allegations of fact bringing the statements within the meaning of the statutory prohibition, are mere naked conclusions, and fail to substantiate the alleged cause of action. In accordance with the foregoing, the defendants' motion to dismiss the complaint is granted, with costs.